IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CARL THULIN, Relator for the UNITED
STATES OF AMERICA, STATE OF
CALIFORNIA, STATE OF ILLINOIS,
STATE OF INDIANA, STATE OF
MICHIGAN, STATE OF MINNESOTA,
STATE OF MONTANA, STATE OF
TENNESSEE, and STATE OF WISCONSIN,

|  |  |  |
|---|---|---|
| Plaintiffs, | | OPINION AND ORDER |
| v. | | 10-cv-196-wmc |

SHOPKO STORES OPERATING CO., LCC,

Defendant.

As relator for the United States of America, State of California, State of Illinois,
State of Indiana, State of Michigan, State of Minnesota, State of Montana, State of
Tennessee and State of Wisconsin, plaintiff Carl Thulin brings this *qui tam* action
pursuant to 31 U.S.C. § 3730(b). Specifically, Thulin alleges that defendant Shopko
Stores Operating Co., LLC ("Shopko") violated the False Claims Act, 31 U.S.C. § 3729,
and analogous state laws in its submission of claims to state Medicaid agencies. Shopko
filed a motion to dismiss Thulin's complaint, arguing that it both (1) fails to state a claim
as required by Federal Rule of Civil Procedure 12(b)(6); and (2) fails to plead the alleged
fraud with specificity as required by Fed. R. Civ. P. 9(b). Because the claims are
premised on an untenable legal theory, the court will grant Shopko's motion to dismiss as
to the FCA claim with prejudice. As for the state law claims, the court declines to

exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and Seventh Circuit practice, dismissing those claims without prejudice.

ALLEGATIONS OF FACT

In addition to considering the plaintiff's complaint, the court takes judicial notice and has also considered certain exhibits attached to defendant's motion to dismiss and plaintiff's opposition brief:  exhibits 6-9 attached to defendant's opening brief (dkt. ##50-6 to 50-9); exhibits 1-2 attached to defendant's reply brief (dkt. ##62-1 to 62-2); and Exhibits A and B attached to plaintiff's opposition brief (dkt. ##61-1, 61-2).  These exhibits consist of publically-available guides, payer sheets, and other materials describing the National Council for Prescription Drug Programs.  Exhibits 10-14 attached to defendant's opening brief (dkt. ##50-10 to 50-14) consist of similar materials specific to Idaho, and exhibits 15-19 (dkt. ##50-15 to 50-19) consist of Minnesota-specific materials.

The court may take judicial notice of undisputed matters in the public record without converting a motion to dismiss into a motion for summary judgment.  *See, e.g.*, *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008) ("We may take judicial notice of documents in the public record . . . without converting a motion to dismiss into a motion for summary judgment.").  These exhibits help to fill in significant gaps in the

complaint and provide the court with important context to fully understand and evaluate the nature of plaintiff's allegations.[1]

Of course, as with the well-pleaded allegations in the complaint itself, the court views these facts and reasonable inferences in a light most favorable to plaintiff as the non-moving party.

### A.  The Parties

Plaintiff Carl Thulin is a pharmacist and was employed by Shopko in Idaho from roughly 2006 until 2009.  Shopko owns and operates a chain of retail pharmacies in the eight states listed above.

### B.  Overview of Medicaid and Dual-Eligible Customers

Medicaid is a state-administered program that is jointly-funded by federal and state governments.  42 U.S.C. § 1396a(a); 42 C.F.R. § 430.0.  As a condition of receiving federal funding, states must operate their Medicaid program through "an approved state plan."  42 C.F.R. § 433.10.  Among the obligations imposed by the federal government on participating states is the "coordination of benefits" between the Medicaid program

---

[1] The same cannot be said of other exhibits Shopko chose to attach to its motion, particularly exhibits concerning the status of plaintiff's pharmacist license.  (Dkt. ##50-1 to 50-5.)  The issue of Thulin's status as a licensed pharmacist is in no way relevant to the present motion.  Defendant's submission of these documents was an unsubtle, backhanded and disappointing attempt to color the court's impression of plaintiff.  Not only are these documents not material to plaintiff's complaint or the present motion, it was entirely inappropriate for defendant to raise Thulin's status as a licensed pharmacist at this stage in the case.  Accordingly, the court has disregarded these materials.

and private insurance companies.  Some Medicaid recipients also have health insurance coverage from private, third-party insurers.  These individuals are sometimes referred to as "dual-eligibles."  Shopko provides pharmacy prescription medication services to "dual-eligible" customers.  Thulin's complaint primarily focuses on Shopko's billing of those individuals' prescriptions.

Because Medicaid is the payer of last resort, states are required to determine the liability of any third-party insurers first.  42 U.S.C. § 1396a(a)(25)(A); 42 C.F.R. §§ 433.136, 433.138-39.  When a Medicaid agency is billed for items or services furnished to a recipient who also has private coverage, the state must pay the claim to the provider "to the extent that payment allowed under the [state] payment schedule exceeds the amount of the third party payment."  42 C.F.R. § 433.139(b)(1).

### C. Claims Transmission System

One of the provisions of the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191 requires the Secretary of Health and Human Services to "adopt standards for transactions and data elements for such transactions to enable health information to be exchanged electronically."  42 U.S.C. § 1320d-2(a)(1).  In implementing this provision, the Secretary adopted the so-called "Telecommunication Standard" of the National Council for Prescription Drug Programs ("NCPDP") version 5, release 1, known as NCDPD 5.1.  45 C.F.R. § 162.1102(a)(1).  Under these rules, pharmacies are required to use NCPDP 5.1 for all claims submissions to all health plans, including all state Medicaid programs.  45 C.F.R. §§ 162.1101(a), 160.103.  The use of

NCPDP 5.1 Telecommunication Standard was mandated during the relevant period of this case. 45 C.F.R. §§ 162.1801-162.1802.

NCPDP 5.1 provides standard specifications for data inputs, known as "fields," although states are generally free to choose which fields to require pharmacies to complete in their claims transmission. States set forth these requirements using documents known as "payer sheets," which as defendant demonstrates may not include all of the NCPDP 5.1 fields. For every claim submission, there is a "submit" transaction from the pharmacy to the "payer" and a "response" transaction from the payer to the pharmacy. For dual-eligible claims, there are four transactions: one to the private insurer; one from the private insurer; one to the state Medicaid agency; and one from the state Medicaid agency. A payer or "submit" transaction could contain 168 NCPDP fields; a "response" transaction could contain 83 fields. (Def.'s Mot. to Dismiss, Ex. 6 (NCPDP Telecommunication Standard Implementation Guide 5.1) (dkt. #50-6).)

No one data field represents an invoice or a request for a specific amount of money from a pharmacy to a Medicaid state agency. Rather, the state Medicaid agency uses the data collected in the form to determine the amount of reimbursement allowed according to the state's "payer sheets."

### D. Shopko's Alleged Billing Practice

Thulin alleges that Shopko submitted false claims through a computer system which is programmed by Shopko and used for the filling and billing of prescriptions, including prescriptions for dual-eligibles. Under this system, the private insurance claim

is submitted first and paid by the private insurer or a pharmacy benefit management company ("PBM") hired by the insurer to manage and administer the prescription drug benefit consistent with the insurance policy.  Thulin alleges that this "first paid claim is then readjusted by the Shopko computer to a higher dollar amount and the claim is sent to Medicaid."  (Compl. (dkt. #1) ¶ 37.)  The Medicaid claim is then adjudicated by Medicaid.  (These two claims are both submitted electronically within seconds of each other at the time the prescription is dispensed.)[2]  Central to his claims, Thulin alleges that "[t]his internal program of the two systems bills more for dual eligible patients than was allowed under the assignment of rights and benefits provision of federal law and contract provisions of private insurance companies."  (*Id.*)[3]

Thulin attaches to his complaint thirty-one records from the Shopko pharmacy where he worked.  Each document consists of three pages, which plaintiff purports discloses billing information for specific transactions.[4]  In his complaint, Thulin describes

---

[2] In his opposition brief, Thulin argues, inconsistent with his allegations in his complaint, that "Shopko prevents the State Agency from performing this function [of ensuring that Medicaid is the payer of last resort] because they submit the beneficiary's private insurance claim simultaneously."  (Pl.'s Opp'n (dkt. #61) 21.)  The court relies on the pleadings in the complaint in reviewing a motion to dismiss.  *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

[3] The specifics of this alleged theory of liability are discussed below in the opinion.

[4] In his brief in opposition to defendant's motion to dismiss, plaintiff provides additional detail about the records.  "The first page of each Exhibit contains information with respect to the beneficiary, the drug in question, prescribing physician and other related information.  Page two details information regarding the amount billed to the private medical insurer.  Page three shows the billing transactions with Medicaid including the amount submitted and the amount paid."  (Pl.'s Opp'n (dkt. #61) 19 n.6 (citing Compl. (dkt. #1) ¶¶ 37-39).)

the data using two specific examples.  In both examples, Medicaid reimbursed Shopko for more than the co-pay amount.  (Compl. (dkt. #1) ¶¶ 37-38.)  Thulin contends that "many thousands of these false claims have been submitted by Shopko stores for Medicaid payment from the past to the present and continuing." (*Id.* at ¶ 40.)

Plaintiff further alleges that Shopko is a "large provider of prescription services and a sophisticated national company with vast resources to research and understand the law as it pertains to pharmacy and the reimbursement of prescription medications" and that it "knows the prices and reimbursement rates that [it] receives from these private insurance companies and PBMs." (Compl. (dkt. #1) ¶¶ 32-33.)  As such, Shopko, has "the knowledge and ability to comply with the lower assigned-right price." (*Id.* at ¶ 31.)  Thulin further alleges that state Medicaid agencies lack this knowledge because they are not a party to the contracts between Shopko and the private insurance companies or PBMs and, therefore, "do not know the price benefit that the dual eligible patient assigns to the government." (*Id.* at ¶ 35.)  As a result, Thulin alleges:  "The state Medicaid agency is at the mercy of the provider, Shopko, to accurately calculate the assigned benefit of the drug pricing." (*Id.*)  Similarly, Thulin explains, the dual-eligible customer does not know the prices he has legally assigned to the state Medicaid agency, relying on Shopko "to accurately calculate and assign the benefit to the government." (*Id.*)

### E.  Thulin's Discovery of the Fraud

Thulin was a pharmacist at Shopko from September 2006 until October 2009 in Idaho.  In this position, he observed that Shopko's computer system did not present the

7

billing and payment amount information on the patients' receipts or otherwise make it available to the pharmacist or technician processing prescriptions.  Still, Thulin somehow gained access to documents showing billing transactions, like those attached as Exhibit A to his complaint.  Thulin alleges that hard copy and electronic documents of this alleged fraud are in the exclusive possession and control of Shopko.  Thulin further alleges that the state Medicaid agencies were unaware of this fraud.

### F. Causes of Action

Thulin alleges causes of action under the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, and similar laws of the eight defendant states, Count II (Cal. Gov't Code § 12650 *et seq.*); Count III (740 Ill. Comp. Stats. 175/4, 175/3, 175/1); Count IV (Ind. Code § 5-11-5.5); Count V (Mich. Comp. Laws §§ 400.601, 752.1001); Count VI (Minn. Stat. 15C.01); Count VII (Mont. Code Ann. Ch. 465, §17-8-401); Count VIII (Tenn. Code Ann. §§ 75-1-181, 4-18,101); and Count IX (Wis. Stat. § 20.931).

Thulin filed this complaint on April 9, 2010, as a *qui tam* plaintiff on behalf of the United States government and the states of California, Illinois, Indiana, Michigan, Minnesota, Montana, Tennessee and Wisconsin.  The complaint was originally filed *in camera* and remained under seal until February 18, 2011, to provide an opportunity for the government to investigate the complaint.  Neither the federal government nor any of the named states opted to intervene.

OPINION[5]

Shopko moves for dismissal of Thulin's complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When reviewing a Rule 12(b)(6) motion to dismiss, the court "accept[s] as true all well-pled facts alleged, taking judicial notice of matters within the public record, and drawing all reasonable inferences in the plaintiff's favor."  *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 493 (7th Cir. 2011).

"The FCA is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b)."  *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005).  Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity."  In the FCA context, the Seventh Circuit requires that a complaint allege a false claim "at an individualized transaction level."  *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740-41 (7th Cir. 2007), *overruled on other grounds by, Glaser v. Wound Care Consultants, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal citation omitted).

---

[5] This court has subject matter jurisdiction over plaintiff's FCA claim pursuant to 28 U.S.C. § 1331.  Plaintiff requests that the court exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims.

## I.  FCA Claim

Shopko is liable under the FCA if it "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."   31 U.S.C. § 3729(a)(1)(A);  *see also United States ex rel. Durcholz v. FKW, Inc.*, 189 F.3d 542, 544 (7th Cir. 1999) (explaining that a violation of the FCA requires "knowing presentation of a claim that is either fraudulent or simply false").[6]  To state a cause of action, Thulin must adequately allege three elements: "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false."  *Fowler*, 496 F.3d at 740-41 (internal citation omitted).  The FCA "is not an appropriate vehicle for policing technical compliance with administrative regulations."  *Durcholz*, 189 F.3d at 545 n.2.

Plaintiff has properly pled, and there is no dispute, that Shopko submitted claims to state Medicaid agencies for payment.  The dispute is over whether the allegations of Thulin's complaint supports a finding as a matter of law that (1) the claims were false; and (2) Shopko had knowledge that the claims were false.  As the Seventh Circuit has observed, these elements are closely related since "it is impossible to meaningfully discuss

---

[6] In his complaint, plaintiff cites to 31 U.S.C. § 3729, without any citation to specific subsections.  In his brief in opposition to defendant's motion to dismiss, plaintiff cites to both subsections (a)(1) and to (a)(2).   (Pl.'s Opp'n Br. (dkt. #61) 15.)   Subsection (a)(1), which has been recodified (a)(1)(A), is described above.   Subsection (a)(2), which has been recodified (a)(1)(B), imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."   31 U.S.C. § 3729(a)(1)(B).  Plaintiff does not explain, and the court cannot discern, any meaningful distinction between the presentment of a false claims and use of a false record in support of that claim set forth in these two subsections, at least as they relate to plaintiff's allegations and so they are treated as one.

falsity without implicating the knowledge requirement." *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1012, 1018 (7th Cir. 1999).   Consistent with the Seventh Circuit's treatment of similar FCA claims, this court will also analyze Thulin's allegations with regard to these two requirements together.  *Id.*

In order for a claim to be false or fraudulent, it must be prohibited by a federal regulation or statute.  *See United States ex rel. Crews v. NCS Healthcare of Ill., Inc.*, 460 F.3d 853, 858 (7th Cir. 2006) ("[I]f there is no requirement to adjust the claim, there is no liability for a failure to do so.") (internal citation omitted).  Thulin alleges that Shopko failed to disclose the actual amount of the co-pays, as opposed to falsely stated the amount.  Absent an obligation to disclose this information, however, the omission of this information cannot be false or fraudulent.  *See United States ex rel. Berge v. Bd. of Trustees of the Univ. of Al.*, 104 F.3d 1453, 1461 (4th Cir. 1997) ("There can only be liability under the False Claims Act where the defendant has an obligation to disclose omitted information."); *United States ex rel. Haight v. Catholic Healthcare West*, No. CV-01-2253-PHX-FJM, 2007 WL 2330790, at *5 (D. Ariz. Aug. 14, 2007) ("The False Claims Act does not impose liability for omissions unless the defendant has an obligation to disclose the omitted information."); *United States ex rel. Milam v. Regents of Univ. of Cal.*, 912 F. Supp. 868, 883 (D. Md. 1995) (same).

Thulin must also allege with specificity that Shopko had knowledge that the claims were false as submitted.  31 U.S.C. § 3729(a)(1).  "The *mens rea* element, 'knowingly,' requires that the defendant have actual knowledge of (or deliberately ignore or act in reckless disregard of) the truth or falsity of the information . . . .  Thus,

'innocent' mistakes or negligence are not actionable." *Fowler*, 496 F.3d at 742 (quoting *Durcholz*, 189 F.3d at 544).

Thulin's claims rest on his contention that Shopko may only seek reimbursement for the amount of the co-pay allowed under the contracts between private health insurers and Shopko. As far as this court can discern, Thulin has two bases for this assertion. First, Thulin alleges that Shopko violates the federal assignment requirement by seeking reimbursement for more than the co-pay. Second, Thulin argues that certain federal and state regulations limit reimbursement of dual-eligible prescriptions to the co-pay amount. The court addresses each in turn.

## A. Federal Assignment Requirement

When dual-eligibles apply for benefits to the state agency that administers Medicaid, they are required to assign to the State any rights they have under their private insurance plan. Title 42 U.S.C. § 1396k(a)(1)(A) provides:

> **(a)** For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall--
>
> **(1)** provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required--
>
> **(A)** to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this subchapter and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a

12

court or administrative order) and to payment for medical care from any third party[.]

Moreover, states are required to condition eligibility for Medicaid on this assignment:

(a) A State plan must provide that, as a condition of eligibility, each legally able applicant or recipient is required to:

(1) Assign to the Medicaid agency his or her rights, or the rights of any other individual eligible under the plan for whom he or she can legally make an assignment, to medical support and to payment for medical care from any third party[.]

42 C.F.R. § 433.145.

A private insurance company generally negotiates for prescription medications at a discounted, lower price than otherwise available to the general public. Thulin alleges that "[i]n most cases, those medications are paid for by the private insurance company less a small co-pay or deductible amount per prescription that is paid by [the] patient." (Compl. (dkt. #1) ¶ 25.) Thulin further alleges that "[i]n all provider contracts Shopko enters into with private insurance companies and pharmacy benefit management companies ('PBMs'), Shopko agrees to accept as payment in full these lesser amounts agreed upon with the private insurance company." (*Id.*) Therefore, Thulin contends that since "the government obtains the rights and benefits of the private health insurance for these dual-eligible patients," ShopKo's "[b]illing for more than [the co-pay] is contrary to the private insurance contract and the assignment of that contracted rate to Medicaid." (Compl. (dkt. #1) ¶¶ 25, 28.)[7]

---

[7] Thulin further alleges that private insurance companies, through the aid of PBMs, "usually purchase prescriptions at lower prices than state Medicaid agencies." (Compl.

### 1.  Falsity

Thulin's argument that ShopKo acted fraudulently requires at least two inferences that appear without support in the plain language of the assignment requirement, corresponding regulations, case law, or logic.  *First*, the plain language of 42 U.S.C. § 1396k(a)(1)(A) requires Medicaid recipients who also have access to private health care insurance to assign any rights "to payment for medical care from any third party" to the State.  On its face, at least, this provision does not apply to medical care providers.  Plaintiff offers no basis for reading this provision to require medical providers to assign their right to medical reimbursement payments from private health care insurers to the State.

*Second*, as defendant explains, there are two contracts at play here.  The first is the contract between the dual eligible customer and his or her private health insurer; the second is the contract between Shopko and the private health insurer.  Any limits on what Shopko may charge its dual eligible customers are covered by the contract between Shopko and the private health insurer.  Accordingly, under plaintiff's theory, the assignment regulation which applies to Medicaid recipients requires Shopko to assign its

---

(dkt. #1) ¶ 27.)  Shopko disputes this directing the court to a *New York Times* article, which states that Medicaid rates are "typically lower than what Medicare and commercial insurance pay."  Robert Pear, *Rule Would Discourage States' Cutting Medicaid Payments to Providers*, N.Y. TIMES, May 3, 2011, *available at* http://www.nytimes.com/2011/05/03/us/politics/03medicaid.html?scp=1&sq=%22rule% 20would%20discourage%22&st=cse.  For purposes of deciding ShopKo's motion to dismiss, the court need not (and should not) resolve this factual dispute, and will instead assume as plead that a state Medicaid agency usually is unable to negotiate lower prices than a private insurer, a fact also supported for at least some prescriptions by Exhibit A to plaintiff's complaint, showing private health insurers have negotiated lower prices than state Medicaid agencies.

rights under a contract to which the Medicaid recipient is not even a party.  Once again, plaintiff fails to provide any basis for reading this obligation into the language of 42 U.S.C. § 1396k(a)(1)(A), corresponding regulations, or case law interpreting this law. While the court is to accept as true all well-pled facts and draw all reasonable inferences in plaintiff's favor, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949.

Tellingly, when faced with this challenge from defendant, plaintiff's response falls short.  Instead of providing any support for his position that the assignment regulation applies to providers like Shopko, plaintiff attempts to muddle defendant's actual argument, claiming that defendant is really arguing that state regulations take supremacy over federal assignment law or that the NCPDP somehow insulates Shopko from the assignment law.  (Pl.'s Opp'n (dkt. #61) 10-13.)  Thulin, however, fails to explain how the assignment law applies to Shopko in the first instance or provide any support for his legal claim.

## 2.  Knowledge

Even assuming plaintiff's complaint adequately pleads a false or fraudulent claim, the complaint fails to adequately plead the knowledge requirement.  At the very least, the above discussion demonstrates that Thulin's theory of liability is premised on an interpretation of the assignment requirement which is open to debate.  "[I]mprecise statements or differences in interpretation growing out of a disputed legal question are . . . not false under the FCA." *Lamers*, 168 F.3d at 1018 (citing *Hagood v. Sonoma Cnty. Water Agency*, 81 F.3d 1465, 1477 (9th Cir. 1996)); *see also United States v. Medica Rents*

*Co. Ltd.*, Nos. 03-11297, 06-10393, 07-10414, 2008 WL 3876307, at *3 (5th Cir. Aug. 19, 2008) (holding that the "substantial confusion created by contradictory instructions and guidance . . . does not support a reasonable inference that [the defendant] knowingly submitted false or fraudulent claims").

Indeed, numerous district courts have dismissed similar FCA claims at least in part because a debate surrounding the plaintiff's theory of falsity precludes any finding of knowledge. *See, e.g., United States ex rel. Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d 303, 316 (S.D.N.Y. 2011) ("Even assuming the claims submitted by [defendants] were 'false,' given the lack of clarity in the law, it cannot be said that defendants 'knew' the claims were false."); *United States ex rel. Raynor v. Nat'l Rural Utils. Co-op Fin. Corp.*, No. 8:08CV48, 2011 WL 976482, at *9 (D. Neb. Mar. 15, 2011) ("[N]othing indicates that [plaintiff's] allegations of GAAP violations are anything more than imprecise statements or differences in interpretation of a disputed or unclear legal question, neither of which are false claims under the FCA."); *United States v. Sodexho, Inc.*, No. 03-6003, 2009 WL 579380, at *17 (E.D. Pa. Mar. 6, 2009) ("The lack of clarity regarding the proper interpretation of the regulations indicates that no basis exists for imposing FCA liability on Defendants, who merely adopted a reasonable interpretation of regulatory requirements which favored their interests."); *United States ex rel. Englund v. Los Angeles Cnty.*, No. CIV. S-04-282 LKK/JFM, 2006 WL 3097941, at *7 (E.D. Cal. Oct. 31, 2006) ("Claims are not 'false' under the FCA when reasonable persons can disagree regarding whether the service was properly billed to the Government.").

16

Moreover, except for pleading Shopko's knowledge of co-pay amounts (Compl. (dkt. #1) ¶¶ 33-34), plaintiff's allegations of knowledge fail to meet the pleading requirements under Rule 8, not to mention the heightened requirement under Rule 9(b). (*See* Compl. (dkt. #1) ¶¶ 46-47 (alleging that Shopko "knowingly presented" and "knowingly made" false claims).)   Plaintiff states in his opposition brief that "Shopko knows, via the law and the contracts they sign, the prices that the dual eligible parties they serve are assigned to the States."   (Pl.'s Opp'n (dkt. #61) 28.)   To the extent plaintiff is alleging that Shopko knows that the assignment law applies to it as a provider (rather than pleading that it knows the prices it negotiates with private health insurers), the pleading is not at all clear.   Neither does plaintiff allege facts to support *how* Shopko knows of such an obligation, nor *who* in the organization has actual knowledge.   *See Fowler*, 396 F.3d at 743 ("This allegation also fails because the Relators do not provide any information to satisfy the knowledge requirement of the False Claims Act.   There is no evidence in the proposed third amended complaint that Caremark had actual knowledge of this issue or otherwise ignored or disregard it.   At best, the 'scheme' as currently alleged by the Relators merely rises to a breach of contract dispute between the health plans, the government and Caremark.").

### B.  Regulatory Reimbursement Limits

As described in exhaustive detail in defendant's opening brief in support of its motion for summary judgment, the NCPDP allows for state Medicaid agencies to collect co-pay data but does not require it.   (Def.'s Opening Br. (dkt. #50) 21-25.)   The NCPDP

Guide labels various fields related to co-pay amounts as ""O" for optional, while other fields are labeled as "M" for mandatory or "RW" for required when other information is available or in certain specified situations.  (*Id.* at 22 (citing Def.'s Mot. to Dismiss, Ex. 6 (NCPDP Telecommunication Standard Implementation Guide 5.1 (dkt. #50-6).)  Based on this, defendant persuasively argues that there is no federal obligation for providers such as Shopko to disclose co-pay data and, therefore, plaintiff's contention that Shopko is limited to seeking a dual-eligible's co-pay amount from Medicaid is fundamentally flawed.

In response, plaintiff cites to a Q&A section in the NCPDP Guide, wherein a Medicaid provider describes his or her understanding that entering the "co-pay" amount is an "industry standard."  (Pl.'s Opp'n (dkt. #61) 12.)[8]  This passage provides insufficient support -- at least standing alone -- to permit a finding as a matter of law that federal regulations limit a provider's Medicaid claims for dual eligibles to the co-pay owed under the provider's contract with the private health insurer.  Indeed, plaintiff's citation to a Q&A section neither delineates any clear limit of claims to co-pay amounts, nor identifies any source for such an obligation.  If anything, the question posed as "looking for clarification on how new fields" are used (Def.'s Reply (dkt. #62) 20), provides

---

[8] While plaintiff's complaint does not identify any federal regulation requiring providers to limit reimbursement sought from the state Medicaid agency to any co-pay owed by dual-eligible customers, Thulin asserts in his opposition brief that a provision of the NCPDP and a provision in a 1990 manual issued by the Centers for Medicare & Medicaid Services, support his theory that federal law requires such a limitation. Normally, the court would not consider allegations outside of the complaint in deciding a motion to dismiss, but given the court's decision to dismiss Thulin's claims with prejudice, the court will consider the additional allegations raised in his opposition brief.

further support that no clear federal regulation exists requiring claims to be limited to co-pay amounts under a customer's private insurance policy.

Plaintiff also cites to a 1990 CMS (which stands for Centers for Medicare & Medicaid Services) Manual.  (Pl.'s Opp'n (dkt. #61) 22-23.)   In relevant part, the Manuel provides:

> 3904.7   Medicaid Payment to Providers Who Offer Discounts to Third Party Payers. -- Some providers enter into agreements with third party payers to accept payment for less than the amount of charges.  These arrangements are often referred to as "preferred provider agreements" or "preferred patient care agreements."
>
> Whenever you are billed for the difference between the payment received from the third party based on such an agreement and the charges, do not make Medicaid payment. The provider's agreement to accept payment of less than its charges constitutes receipt of a full payment for its services, and the insured has no further responsibility.  Medicaid is intended to make payment only where there is a recipient legal obligation to pay.

(*Id.*)  Even this passage, however, fails to provide the support for plaintiff's position for at least two reasons.  First, the provision is directed at state Medicaid agencies, not providers.  Assuming the provision governs the alleged claims submitted by Shopko, state Medicaid agencies would be on the hook to implement a regulation limiting providers' claims to co-pay amounts.  Second, as defendant explains, the regulation providing the underlying authority for this manual instruction states that when the amount of third-party liability is determined, the state Medicaid agency "must then pay the claim to the extent that payment allowed under the agency's payment schedule exceeds the amount of the third party's payment."   42 C.F.R. § 433.139(b)(1).   Accordingly, the actual

19

regulation does *not* limit a provider's reimbursement to the co-pay amount contracted with a private health insurance company.

Thulin also points to state law regulations for support,[9] contending that Shopko as a provider is limited to collecting the co-pay or deductible as "required by the pertinent Medicaid rule or regulation for certain of the named plaintiff states." (Compl. (dkt. #1) ¶ 29.)  Specifically, Thulin points to a Minnesota provision.  (*Id.* (citing Minnesota Health Care Programs Provider Manual, Ch. 2, p.15 (Feb. 2005 ed.))

Plaintiff has not, however, alleged any individual transactions in Minnesota as required to meet the pleading requirements of Rule 9(b).  *Fowler*, 496 F.3d at 742 (affirming the dismissal of an FCA claim on Rule 9(b) grounds where the relator failed to "present any evidence *at an individualized transaction level* to demonstrate" that the defendant in that action committed fraud).  The complaint only alleges individual transactions in Idaho.  While plaintiff pleads generally that "certain of the named plaintiff states" have a provision limiting claims to the co-pay amount, he neither points to such an Idaho regulation in his complaint, nor does he identify one in his opposition brief.  Indeed, the 2004 Idaho Medicaid Provider Handbook that would appear to govern the relevant period, does *not* require or request information on the amount of the co-pay. (Def.'s Opening Br. (dkt. #5) 44 (citing Def.'s Mot. to Dismiss, Ex. 11 (Idaho Medicaid Provider Handbook, General Billing Information, 2-25 to 2-26 (June 2004) (dkt. #50-

---

[9] Neither party discusses whether submitting a claim prohibited by a *state* law regulation could form the basis for a *federal* FCA claim.  For the purpose of deciding the present motion, the court will nevertheless assume that as long as the claim submitted seeks federal money, the submission of the claim need only be prohibited law, whether federal or state.

11).)[10]  Absent a false statement or an obligation to disclose information, there can be no liability under the False Claims Act.  *See Berge*, 104 F.3d at 1461.

All of this is not intended to discount the serious, underlying policy problem the Relator and many others have pointed out:  state and federal governments have been reimbursing private parties for the costs of pharmaceuticals over and above the amount paid under more favorable formularies negotiated by private insurers and PBMs. Hopefully, changes in state and federal formularies have corrected much of this problem. But the fact that providers at times were able to obtain a higher reimbursement for dual-eligibles because of their Medicaid coverage than they would if those same individuals only had private insurance does not by itself constitute fraud.

Accordingly, plaintiff's allegations cannot support a finding of falsity or knowledge required to support a FCA claim.  Moreover, because plaintiff's theory of liability fails as a matter of law under the facts affirmatively alleged, the court will dismiss his FCA claim with prejudice.  *See Garcia v. City of Chi., Ill.*, 24 F.3d 966, 970 (7th Cir. 1994) ("A district court does not abuse its discretion in denying leave to amend if the proposed repleading would be futile[.]").

## II. State Law Claims

Thulin asks the court to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims in the complaint.  (Compl. (dkt. #1) ¶ 7.)

---

[10] Idaho did not require co-pay data until 2010, which postdates the period for which plaintiff has plead any individualized transactions.  (Def.'s Opening Br. (dkt. #50) 44.)

Having dismissed Thulin's only federal claim, the court will decline to exercise its supplemental jurisdiction and will dismiss the remaining state law claims without prejudice.  *See Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) (explaining that when a district court dismisses a plaintiffs' federal law claims, "the presumption is that the court will relinquish federal jurisdiction over any state law claims").

ORDER

IT IS ORDERED that:

1) Defendant Shopko Stores Operating Company, LLC's motion for a hearing on its motion to dismiss (dkt. #51) is DENIED AS MOOT;

2) Defendant's motion to dismiss (dkt. #49) is GRANTED;

3) Plaintiff's FCA claim is dismissed with prejudice, and plaintiff's state law claims are dismissed without prejudice; and

4) The clerk of the court is directed to enter judgment in favor of defendant and close this case.

Entered this 5th day of November, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

22